# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mohamed Alenizi, | No. CV-11-183-TUC-JGZ-DTF |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| vs. | |
| Michael J. Astrue, Commissioner of Social Security Administration | |
| Defendant. | |

Plaintiff Mohamed Alenizi brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision by the Commissioner of Social Security (Commissioner). This case presents three issues on appeal: whether the Administrative Law Judge (ALJ) erred in concluding, without the assistance of a vocational expert, that Alenizi could perform other work in the economy; whether the ALJ erred in finding that Alenizi could learn and remember detailed instructions; and whether the ALJ erred in evaluating lay witness testimony. Before the Court are Alenizi's Opening Brief, Respondent's Response and a Reply. (Docs. 15, 19, 22.) Based on the pleadings and the administrative record submitted to the Court, the Magistrate Judge recommends the District Court, after its independent review, remand to the ALJ.

## PROCEDURAL HISTORY

Alenizi filed an application for Supplemental Security Income (SSI) on September 14, 2007. (Administrative Record (AR) 93.) Alenizi alleged disability from January 1, 2005. (*Id.*) Alenizi's application was denied upon initial review (AR 68-71) and on reconsideration (AR

73-75). A hearing was held on September 15, 2009 (AR 35-64), after which ALJ Larry E. Johnson found, at Step Five, that Alenizi was not disabled (AR 23-31). The Appeals Council denied Alenizi's request to review the ALJ's decision. (AR 13.)

## FACTUAL HISTORY

Alenizi was born on April 25, 1964, making him 40 at the alleged onset date of his disability. (AR 93.) He entered the United States as a refugee from Kuwait on April 26, 2001; he had been removed from that country because he was an undocumented bedouin. (AR 57-59, 93, 100.) He attended elementary education in Kuwait (AR 56) and never worked because he was undocumented (AR 57). After coming to the United States, he worked as a dishwasher from 2001 to 2003, earning approximately $8000 the first two years and $4000 the final year. (AR 105, 114.) He stopped working on August 1, 2003, when he was fired due to his problems with other workers. (AR 47, 113.)

The ALJ found that Alenizi had three severe impairments, diabetes mellitus type II, hypertension and bipolar disorder. (AR 25.) The ALJ concluded that Alenizi had no exertional impairments and could perform the full range of work for all exertional levels with certain nonexertional impairments: he does not speak English well, must work in a setting with few social contacts, and he can learn and remember detailed instructions. (AR 27.) The ALJ found Alenizi unable to perform his past relevant work as a dishwasher because it required frequent social contacts. (AR 30.) The ALJ found that Alenizi's ability to perform work at all exertional levels was effected only minimally by his nonexertional limitations and those limitations did not significantly erode the potential occupational base. (AR 30-31.)

## STANDARD OF REVIEW

The Commissioner employs a five-step sequential process to evaluate SSI claims. 20 C.F.R. § 416.920; *see also Heckler v. Campbell,* 461 U.S. 458, 460-462 (1983). To establish disability the claimant bears the burden of showing he (1) is not working; (2) has a severe physical or mental impairment; (3) the impairment meets or equals the requirements of a listed impairment; and (4) claimant's residual functional capacity (RFC) precludes him from

performing his past work. 20 C.F.R. § 416.920(a)(4). At Step Five, the burden shifts to the Commissioner to show that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. § 416.920(a)(4).

In this case, Alenizi was denied at Step Five of the evaluation process. The Step Five determination is made on the basis of four factors: the claimant's RFC, age, education and work experience. *Hoopai*, 499 F.3d at 1074. "The Commissioner can meet this burden through the testimony of a vocational expert or by reference to the Medical Vocational Guidelines." *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). The findings of the Commissioner are meant to be conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)). The court may overturn the decision to deny benefits only "when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). This is so because the ALJ "and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney,* 981 F.2d at 1019 (quoting *Richardson v. Perales*, 402 U.S. 389, 400 (1971)); *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1198 (9th Cir. 2004). The Commissioner's decision, however, "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998) (citing *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). Reviewing courts must

1 consider the evidence that supports as well as detracts from the Commissioner's conclusion. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).

## **DISCUSSION**

Alenizi contends the ALJ erred at Step Five by determining that his limited ability to speak English and need to work in a setting with limited social contacts had only a slight effect on the occupational base of available work. Second, he argues the ALJ's finding that he could learn and remember detailed instructions was error. Third, he argues the ALJ erred in rejecting the lay testimony of Alenizi's niece, Sheikha Alenizi.

**Step Five Decision**

Alenizi argues his occupational base is significantly impacted by several adverse vocational factors or nonexertional limitations: that he speaks Arabic almost exclusively and very little English, is illiterate, and can only work in a setting requiring few social contacts. He argues that the ALJ erred in making the Step Five decision without the testimony of a vocational expert.

During the Step Five analysis, an ALJ looks to the Medical-Vocational Guidelines, or grids, when evaluating what other work in the national economy a claimant can perform. When the claimant has solely nonexertional limitations, these grids do not govern the disability finding; however, the accompanying rules must be considered in evaluating the claimant's ability to do other work. It's not error for an ALJ to use the grids without a vocational expert, even with a claimant who has non-exertional impairments. *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007). However, if the non-exertional limitations are "sufficiently severe," such that they significantly limit the work available, the grids are not applicable. *Id.*

Here, the ALJ considered the rules that accompany the grids to the extent applicable to Alenizi's non-exertional limitations. (AR 30.) Because he could perform work at any exertional level, the ALJ found Alenizi's potential occupational base was large and not significantly eroded by his limitations. (AR 30-31.) The ALJ relied upon section 204.00 of the guidelines and SSR 85-15.

- 4 -

1 Alenizi argues that SSR 85-15 does not support but undermines the ALJ's
2 determination. He notes that a purpose of SSR 85-15 is to emphasize that "the potential job
3 base for mentally ill claimants without adverse vocational factors is not necessarily large."
4 However, the SSR goes on to say, "unless their remaining mental capacities are sufficient to
5 meet the demands of at least unskilled, competitive, remunerative work on a sustained basis."
6 SSR 85-15. The ALJ concluded Alenizi had the mental capacities for such work, thus, this
7 stated purpose does not drive any particular result in this case.

8 Alenizi also relies upon hypothetical three from SSR 85-15, where the claimant was
9 found disabled based on the following factors: closely approaching retirement age (50-54),
10 limited education or less, and did unskilled work for 30 years as a cafeteria server but a
11 severe mental impairment now precludes frequently dealing with the public. Plaintiff argues
12 that, although he is classified as a "younger individual," he is illiterate and unable to
13 communicate in English, which is a significantly lower educational level than the
14 hypothetical. Further, he only worked for three years in contrast to the 30 years of the person
15 in the hypothetical. In light of that comparison, he argues that he, too, should be found
16 disabled. The guidelines treat a younger person with unskilled experience and no experience
17 the same; thus, Alenizi's work history is treated equivalently with the person in the
18 hypothetical. More importantly, SSR 85-15 notes that the outcome of the hypothetical would
19 not necessarily be the same for a younger person. Although relevant to consider, this
20 hypothetical is not outcome determinative.

21 In responding to Alenizi's argument about the hypothetical, it is helpful to look at
22 some of the provisions that accompany the vocational grids. For example, one of the rules
23 provides:

24 For individuals who are under age 45, age is a more advantageous factor for
making an adjustment to other work. It is usually not a significant factor in
25 limiting such individuals' ability to make an adjustment to other work,
including an adjustment to unskilled sedentary work, even when the
26 individuals are unable to communicate in English or are illiterate in English.

27 20 C.F.R. § 404, Subpart P, App. 2, 201.00(h)(2). Thus, the guidelines give significant
28 weight to the age of the claimant. A person of Alenizi's age, who is unskilled and unable to

- 5 -

communicate in English, are generally considered able to perform other work, even when the person is limited to sedentary work.

Although Alenizi is restricted from working in a setting requiring a lot of interaction, he has no physical exertional limitations. As reflected in the section of the appendix upon which the ALJ relies, "[A]n impairment which does not preclude heavy work (or very heavy work) would not ordinarily be the primary reason for unemployment, and generally is sufficient for a finding of not disabled, even though age, education and skill level of prior work experience may be considered adverse." 20 C.F.R. §404, Subpart P, App. 2, 204.00. Further, an inability to communicate in English is least significant for unskilled work, which tends to require working with objects rather than people; similarly, lack of relevant work experience is not significant to unskilled work. 201.00(h)(4)(i). "[T]he functional capability for a full range of sedentary work represents sufficient numbers of jobs to indicate substantial vocational scope for those individuals age 18-44 even if they are illiterate or unable to communicate in English." *Id.* In light of the fact that unskilled work most commonly involves working with objects, a restriction to limited social contact should be accommodated by a sufficient number of unskilled positions. Under the guidelines discussed above, there are sufficient jobs for younger unskilled persons unable to communicate in English solely in the sedentary sector. Because Alenizi can perform work at all exertional levels, the ALJ's finding is well-founded under the guidelines.

SSR 85-15 provides that:

> The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational basis.

The ALJ found, based on the medical source opinions of record, that Alenizi did not have more than a moderate impairment as to these abilities.

Alenizi's non-exertional limitations are not sufficiently severe such that the ALJ was required to obtain testimony from a vocational expert. The rules do not require it. While it

- 6 -

1  would have been helpful for the ALJ to obtain testimony from a vocational expert, which
2  would have provided more detailed information about the work Alenizi could perform, it was
3  not required. The ALJ did not commit legal error in concluding that Alenizi's non-exertional
4  limitations did not significantly limit the range of work otherwise available to him, in light
5  of the absence of any exertional limitations.

**RFC**

The ALJ found that Alenizi could learn and remember detailed instructions. (AR 27.) Alenizi argues this finding was error because the ALJ failed to explain the contradictory opinions in the record regarding Alenizi's abilities in this area.

In reaching his RFC findings, the ALJ stated that he gave great weight to Dr. Andrew Jones, examining psychologist, and Dr. Eugene Campbell, consulting non-examining psychologist. (AR 29.) Dr. Jones noted that it was difficult to complete typical questions of concentration and memory due to the language barrier but that Alenizi evidenced no difficulties with immediate or remote recall. (AR 226.) However, Dr. Jones noted that Alenizi reported being forgetful and that he had not progressed in English classes after four years. (*Id.*) Dr. Jones concluded that Alenizi had moderate difficulties with memory based on his self-reporting. (AR 227.) Also based on self-report, Dr. Jones found that Alenizi had mild to moderate difficulties with concentration. (*Id.*) In contrast, Dr. Campbell found that Alenizi was not significantly limited in his ability to understand and remember detailed instructions. (AR 230.) However, he did find that Alenizi had moderate difficulties in maintaining concentration, persistence or pace. (AR 244.) The ALJ provided no rationale for his finding that Alenizi could learn and remember detailed instructions.

Defendant argues that the ALJ's finding was not contradicted by Dr. Jones's opinion. In particular, he points out that Dr. Jones noted no difficulty with recall and found it difficult to fully examine Alenizi's memory and concentration. Although true (AR 226), Dr. Jones credited Alenizi's reports of being forgetful, acknowledged that he had not progressed in English class for four years, and concluded that Alenizi had moderate difficulties with memory (AR 226-27). Further, although Dr. Jones did not respond to a specific question about

- 7 -

1 Alenizi's ability to remember instructions, his general finding of moderate limitations in
2 memory and concentration are related. The Court finds there is a conflict in the evidence
3 regarding Alenizi's ability to learn and remember instructions, and the ALJ adopted the
4 opinion of Dr. Campbell.

5 The ALJ was required to provide "specific and legitimate reasons," supported by
6 substantial evidence, to reject the opinion of examining physician Jones. *Lester v. Chater*, 81
7 F.3d 821, 830-31 (9th Cir. 1995). The ALJ did not explain the conflict or his reason for
8 rejecting Dr. Jones's opinion. Defendant argues that a medical opinion can be rejected when
9 it is based primarily upon the claimant's self-report, as he contends was the circumstance of
10 Dr. Jones's opinion. This is irrelevant because, although the ALJ acknowledged that Dr. Jones
11 took note that Alenizi's limitations were self-reported (AR 29), the ALJ did not reject Dr.
12 Jones's opinion for that reason. Rather, he said he gave both Dr. Jones's and Dr. Campbell's
13 opinions great weight, when in fact he rejected part of Dr. Jones's opinion with no
14 explanation. In addition to Dr. Jones's opinion and Alenizi's testimony (AR 133), Alenizi's
15 niece stated that he had problems with concentration and memory and could not remember
16 directions. (AR 151.)

17 Defendant also argues that this particular finding had no bearing on the ALJ's ultimate
18 disability determination. Because unskilled work requires only that a person be able to
19 remember and carry out simple instructions, he contends that ability would not be impaired
20 by moderate difficulties with memory. Here, Defendant finds himself in the position of trying
21 to justify the ALJ's decision after the fact. It is not this Court's province to now assess
22 whether moderate difficulties with memory would erode the occupational base of unskilled
23 work. That is the role of the ALJ. *See Pinto v. Massanari*, 240 F.3d 840, 847-48 (9th Cir.
24 2001) (Court cannot affirm decision of ALJ on a ground not invoked by the ALJ).

25 The ALJ erred in rejecting Dr. Jones's opinion without explanation. This case should
26 be remanded for him to obtain any necessary additional evidence on Alenizi's RFC and to
27 address the conflict in the evidence.

28

**Lay Witness Testimony**

Plaintiff submitted two Function Reports by his niece, Sheikha Alenizi. In the September 22, 2007 report, she reported that he does not sleep well due to nervousness, she needs to remind him to take his medication, he sometimes cannot control his anger with his family, he was fired for arguing with his co-workers, and he does not handle change or stress. (AR 120-26.) In her later, July 1, 2008 report, she reiterated these same observations and noted some changes since the prior report. For example, she indicated that he needed help ironing and preparing his clothes and cleaning his apartment, that someone had to cook for him, that she arranged and transported him to all of his appointments, that he did not like to be around anyone, and he was nervous and paranoid. (AR 146-52.) She also stated that he did not get along well with authority figures because he could not follow everything they said. (AR 152.) The ALJ summarized her report[1] as "opin[ing] that the claimant has several limitations with respect to his ability to function socially and to maintain concentration and attention." (AR 29.) He then stated that he considered this opinion but gave it little weight because the witness is not medically trained, thus, her observations and the accuracy of her input is questionable; she is not a disinterested third party in light of her familial relationship with Alenizi; and he found it inconsistent with the preponderance of the medical opinions. (AR 29-30.)

ALJs must consider lay witness testimony and rejection of lay testimony requires reasons specific to each witness. *Stout v. Comm'r, Social Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). The first two reasons provided by the ALJ for the rejection are legally insufficient. The regulations provide that, when evaluating a claimant's impairments and how they affect his ability to work, the ALJ will consider evidence from non-medical sources, such as family, caregivers and friends. 20 C.F.R. § 416.913(d)(4). The evidence cannot be rejected because it is provided by the sources identified in the regulations, non-medical persons with a relationship to the claimant. *See Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993)

---

[1] The ALJ cited only her July 1, 2008 report. (AR 29 (citing Ex. 7E).)

1  (family members in a position to observe the claimant's symptoms and activities are
2  competent to testify as to his impairments). Defendant concedes that the first two reasons the
3  ALJ provided for rejecting the testimony of Alenizi's niece were erroneous.

4  Alenizi argues that the ALJ's third reason, that the opinion was inconsistent with the
5  medical opinions of record, was conclusory and the ALJ failed to identify any inconsistencies.
6  Defendant contends that just prior to rejecting the niece's testimony, the ALJ had provided
7  a detailed discussion of the medical evidence used to support his decision and he was justified
8  in rejecting lay testimony to the extent inconsistent with that medical evidence.

9  The two specific areas of the niece's testimony that the ALJ acknowledged were
10 related to Alenizi's limitations in social functioning and ability to maintain concentration and
11 attention. First, the ALJ found that Alenizi had limitations in social interactions and could
12 only work in a setting with limited social contact. Thus, he did not in fact reject that portion
13 of her testimony. Any error in stating that he did so was harmless. Second, the ALJ failed to
14 discuss any other record evidence regarding Alenizi's memory and concentration. As
15 discussed above, the ALJ erroneously rejected without discussion Dr. Jones's opinion that
16 Alenizi had moderate difficulties with his memory and concentration. Further, Dr. Jones and
17 Dr. Campbell acknowledged limitations in Alenizi's concentration. Thus, there is not
18 substantial evidence to support the ALJ's finding that the niece's opinion was not consistent
19 with the medical opinions. Third, she also indicated that Alenizi did not handle stress or
20 change well. The ALJ failed to acknowledge that portion of her report entirely. Dr. Jones and
21 Dr. Campbell found that Alenizi was at least moderately limited in his ability to respond to
22 changes in the work setting. (AR 227, 231.) Again, it was error to reject this portion of the
23 niece's opinion, which was consistent with the medical opinions of record, without
24 explanation.

25 The ALJ erred in rejecting Alenizi's niece's testimony on the grounds he cited. Upon
26 remand, he should reconsider her testimony.

27 **REMEDY**

28 The Court has discretion to remand for further development of the record or for an

- 10 -

award of benefits. 42 U.S.C. § 405(g); *see Harman v. Apfel*, 211 F.3d 1172, 1173-74 (9th Cir. 2000). Plaintiff may not qualify for benefits under the governing standards but the Court is unable to assess the ultimate issue because the ALJ's decision is legally and factually erroneous. As discussed above, remand for further proceedings is warranted because the ALJ needs to re-assess the testimony of Dr. Jones and Alenizi's niece. Further, Plaintiff requested only a remand for additional administrative process not an award of benefits. In conducting the review, the ALJ may need to revise his RFC finding and take vocational testimony.

## **RECOMMENDATION**

For the foregoing reasons, the Magistrate Judge recommends the District Court, after its independent review, enter an order remanding the case to the ALJ for further consideration.

Pursuant to Federal Rule of Civil Procedure 72(b)(2), any party may serve and file written objections within 14 days of being served with a copy of this Report and Recommendation. If objections are not timely filed, they may be deemed waived. The parties are advised that any objections filed are to be identified with the following case number: **CV-11-183-TUC-JGZ**.

DATED this 1st day of March, 2012.

*[signature]*

D. Thomas Ferraro
United States Magistrate Judge